IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § | |
| v. | § § | MO:22-CR-00027-DC <br> MO:25-CV-00070-DC |
| (1) MAVERIC CATES | § | |

# ORDER

The Court now considers Maveric Cates' motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255.[1] Cates argues that, even though the time to file his appeal has lapsed, he should be granted equitable tolling because of affirmative misrepresentations made by his lawyer, Luis Chavez, that his appeal had already been filed when it had not. He also argues that Chavez labored under an improper conflict of interest—Cates sold drugs to Chavez's nephew. But after review of the motion,[2] the Government's response in opposition,[3] and the other relevant pleadings, the Court finds that Cates' claim is ultimately time-barred. The Court therefore **DENIES** Cates' motion.[4]

## BACKGROUND

On April 20, 2022, Cates pleaded guilty to one count of violation of 21 U.C.S. § 841(a)(1), 841(b)(1)(A) and 846.[5] The Government's factual basis alleges that:

> On or about Sunday, February 6, 2022, the Department of Public Safety (DPS) conducted a traffic stop of a dark grey Scion iA vehicle bearing

---

[1] ECF No. 66 at 2.
[2] ECF No. 78.
[3] ECF No. 83.
[4] ECF No. 79.
[5] ECF No. 48 at 1.

      CA license plate 8UMV533 on Highway 158, Midland County, TX, for committing various traffic violations. Jennifer JOHNSTON was determined to be the driver of this vehicle, and Maveric CATES the passenger, seated in the front passenger seat. JOHNSTON and CATES were the only occupants of the vehicle.

      High Intensity Drug Trafficking Area (HIDTA) K-9 Logan and Task Force Officer (TFO) Todd Stanley were called to the scene, and K-9 Logan conducted a free-air sniff of the vehicle. K-9 Logan positively alerted to the presence of narcotics, and the probable cause search was conducted of on the vehicle. A cardboard box was discovered in the trunk containing approximately [five] kilograms of actual methamphetamine and is a quantity that is intended for distribution to others. CATES told the DPS Trooper that the cardboard box was his. A handgun was also located underneath the passenger seat where CATEs was sitting, and another handgun was discovered in a duffel bag in the back seat. CATES also had a Samsung cell phone in his possession, and JOHNSTON had an iPhone and a Motorola cell phone.

      On February 6, 2022, subsequent to the traffic stop, JOHNSTON and CATES were transported to the Midland DPS Office for further questioning. At the DPS Office, Drug Enforcement Administration (DEA) Special Agent (SA) Ben Hogue read CATES the *Miranda* warning, and CATES acknowledged his understanding of these warnings. CATES stated that he asked JOHNSTON to take him to Houston to pick up a birthday present.[6]

The Court accepted Cates' plea on May 5, 2022.[7] On July 29, 2022, the Court sentenced Cates to 292 months' confinement, five years' supervised release, and a special assessment of 100 dollars.[8]

Cates never filed notice of appeal. Cates alleges that Chavez did not discuss his appellate rights with him but that he instructed Chavez to appeal. Later, Cates' mother, Leigh Ann McGlinn, supposedly contacted Chavez and asked how long an appeal would take.[9] According to Cates, Chavez responded to McGlinn that it would take eighteen months

---

[6] ECF No. 61 at 4 (capitalization in original).
[7] ECF No. 52.
[8] ECF No. 66.
[9] *Id.*

to two years.[10] After some months passed, and McGlinn reached out again. This time, Chavez is said to have stated that he would contact McGlinn once the brief was done.[11] Despite this apparent brush off, McGlinn tried to contact Chavez several more times.[12] Finally, a whole year after sentencing, she claims she decided to go to Chavez's office where she requested the case files and copies of her son's appeal.[13] Chavez's staff gave McGlinn a copy of Cates' case file but informed her that there was no paperwork or files related to her son's appeal and that no appeal had ever been filed.[14] After this encounter, Chavez went radio silent.[15] For one reason or another, a year and one month later, McGlinn finally told Cates that Chavez never filed an appeal. This § 2255 motion followed four months later—a whopping year and five months after McGlinn discovered that Chavez had apparently never followed through on his pursuit of Cates' appeal.

In a recent show cause order, the Court asked for briefing regarding the possibility that Cates' motion was time-barred.[16] The Government failed to address the time-bar issue in its response, electing instead to respond to the merits of Cates' motion.[17] Cates, however, responded to the Court's show cause order:

> Petitioner contends that equitable tolling is warranted in this case because his attorney intentionally deceived him and his mother. Also, Petitioner contends that equitable tolling is warranted because his lawyer "violated fundamental canons of professional responsibility, which requires attorneys to preform [sic] reasonable competent legal work, to communicate with their clients'

---

[10] *Id.* at 2.
[11] *Id.*
[12] *Id.*
[13] *Id.*
[14] *Id.*
[15] *Id.*
[16] ECF No. 79 at 3–4.
[17] *See generally* ECF No. 83.

reasonable requests, to keep their clients informed of keep their clients informed to key developments in their cases, and never abandon a client." [*See Holland v. Florida*, 560 U.S. 631, 652–53].

In a case very similar to the alleged facts presented in the Petitioner's § 2255 motion, memorandum of law in support, and attached affidavit from the Petitioner's mother, this circuit has held that an attorney's misrepresentations may be grounds for equitable tolling. [*United States v. Wynn*, 292 F. 3d 266, 230 (5th Cir. 2002)].

In Wynn, a 28 U.S.C. § 2255 petitioner alleged that: Wynn's appellate attorney had told him on January 6, 1999, that he would file a § 2255 motion on his behalf; the attorney told Wynn in May 1999 that he had filed the motion; in October 1999, Wynn wrote a letter to the clerk of court inquiring about the status of his § 2255 motion and was told that it was not on file; and when Wynn's father asked the attorney about this matter, the attorney stated that he had filed the § 2255 motion directly with the district judge, that he was waiting for a response, and that "we must be patient." *Id.* at 228-29.[18]

## DISCUSSION

**I.    Statute of Limitations**

According to the governing Federal Rules of Appellate Procedure in effect at the time of Cates' conviction, a conviction becomes final fourteen days after the Judgment and Commitment was signed by this Court. Meaning that when this Court entered conviction on August 8, 2022, it became final on August 22, 2022.[19] When a movant does not file a notice of appeal, his conviction becomes final and then the statute of limitations begins to run as set forth under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). [20]

---

[18] ECF No. 81 at 2.
[19] FED. R. APP. P. 4(b)(1)(A).
[20] 28 U.S.C. § 2255.

AEDPA applies to all § 2255 motions filed after its effective date of April 24, 1996.[21] The statute established a one-year statute of limitations.[22] The one-year clock begins to run from the latest of:

> (1) the date on which the judgment of conviction becomes final;
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.[23]

Unless a movant alleges facts that implicate subsections (2), (3), or (4)—and Cates alleges only subsection (4)—the one-year clock begins to run from the date on which the conviction becomes final.[24]

Following the Court entering the conviction on August 8, 2022—and because Cates never filed notice of appeal—the conviction became final August 22, 2023.[25] Thus, the AEDPA time-period to file any motion, including a § 2255, challenging his judgment of conviction expired on Wednesday, August 22, 2023. Cates, however, did not mail file his *pro se* § 2255 motion until January 18, 2025, which can be determined by the executed-on date above his signature block.[26]

---

[21] *Lindh v. Murphy*, 521 U.S. 320, 336 (1997); *United States v. Flores*, 135 F.3d 1000, 1006 (1998).
[22] *United States v. Thomas,* 203 F.3d 350, 351 (5th Cir. 2000).
[23] 28 U.S.C § 2255 (f)(1)–(4).
[24] *United States v. Plascencia,* 537 F.3d 385, 388 (5th Cir. 2008).
[25] FED. R. APP. 26(a).
[26] ECF No. 78-1 at 8.

Executed on: 1-18-2025

Respectfully submitted,

*Maveric Cates*

Maveric Cates #85451-509
FCC Coleman- Medium
P.O. Box 1032
Coleman, FL 33521

Despite Cates' late motion, at least a portion of his delay can be tolled. Cates placed his § 2255 into the prison-mail system 529 calendar days after the original deadline, or one year, five months and ten days late. The Court now turns to (1) whether the time between entering conviction and discovery of Chavez's misrepresentations as to the status of Cates' appeal should be tolled, and (2) whether the following delay of nearly one and half years should be tolled for independent or alternative rationale.

## II.   Equitable tolling

Given that Cates, acting through McGlinn, states that he took multiple steps to attempt to discover the status of his claim and Chavez, in Cates' version, repeatedly misled and thwarted Cates' attempt to discover the factual predicates of his appeal, this Court turns to whether the statute of limitations should be equitably tolled under § 2255(f)(4).[27]

Cates specifically asks the Court for equitable tolling.[28] It is well understood that a movant is entitled to equitable tolling "only if he shows (1) that he has been pursuing rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented

---

[27] *United States v. Rodriguez*, 858 F.3d 960, 963 (5th Cir. 2017).
[28] ECF No. 81 at 5.

6

timely filing."²⁹ Meaning that Cates in this scenario has the duty to check with the Court regarding the status of his appeal.³⁰ Here, Cates bears the burden of establishing an entitlement to equitable tolling.³¹ Equitable tolling "must be made on a case-by-case basis"³² and such does not lend itself to "bright-line rules."³³

Cates alleges Chavez affirmatively misled him.³⁴ While these facts are only supported by an affidavit from McGlinn,³⁵ this Court and the Fifth Circuit have consistently held that *pro se* pleadings are afforded liberal construction to the extent that affects judicial determinations in the interest of justice.³⁶ That said, *pro se* litigants are not excused from complying with procedural rules, including the requirement to plead specific facts and establish jurisdiction.³⁷ "Lack of knowledge of applicable filing deadlines," "lack of representation," "unfamiliarity with the legal process," and "ignorance of legal rights" do not justify equitable tolling.³⁸

---

²⁹ *Holland v. Florida,* 560 U.S. 631, 649 (2010) (adding clarification); *see also Menominee Indian Tribe of Wisconsin v. United States*, 577 U.S. 250, 257 (2016) (holding "the second prong of the equitable tolling test is met only where the circumstances that caused the litigant's are both (1) extraordinary *and* (2) beyond its control") (emphasis in the original).
³⁰ *See id.*
³¹ *Alexander v. Cockrell,* 294 F.3d 626, 629 (5th Cir. 2002).
³² *Palacios v. Stephens*, 723 F.3d 600, 606 (5th Cir. 2013) (quoting the standard established in *Holland,* 560 U.S. 631, 649–650).
³³*Id.* (citing the holding in *Fisher v. Johnson,* 174 F.3d 710, 713 n.9 (5th Cir. 1999)).
³⁴ ECF No. 66 at 2.
³⁵ ECF No. 78–2 at 1-2.
³⁶ *Haines v. Kerner*, 404 U.S. 519 (1972); *Smith v. Barrett Daffin Frappier Turner & Engel, L.L.P.*, 735 F. App'x 848, 850 (5th Cir. 2018); *See also Miller v. Stanmore*, 636 F.2d 986, 987 (5th Cir. 1981); *Hale v. King,* 642 F.3d 492, 495 (5th Cir. 2011).
³⁷ FED RULES CIV P. R 8; *but see Smith*, 735 F. App'x at 850.
³⁸ *Barrow v. New Orleans S.S. Ass'n,* 932 F.2d 473, 478 (5th Cir. 1991) (citations omitted).

The limitations period for § 2255 motions is subject to equitable tolling "only 'in rare and exceptional cases.'"[39] In such cases, courts must "examine each case on its facts to determine whether it presents sufficiently 'rare and exceptional circumstances.'"[40] "Equitable tolling applies principally where the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his rights."[41] The Fifth Circuit has held that when a petitioner was prevented in some extraordinary way from asserting his rights or where the court misled him into thinking that he had more time to file a § 2255 motion than he actually had, tolling may be granted.[42] While actual innocence is a defense to a time bar, Courts have held this defense inapplicable where it is never raised.[43]

Under these precedents, Cates establishes a basis for equitable tolling without raising actual innocence. Indeed, this is one of those rare and exceptional circumstances where the client was affirmatively misled and effectively prevented from asserting his rights. For instance, Cates alleges that, acting through McGlinn, he requested several status updates regarding his appeal and that, in one exchange, Chavez stated that "he was reviewing the transcripts and would contact her after he finished the initial brief."[44] After several months

---

[39] *United States v. Riggs*, 314 F.3d 769, 799 (5th Cir. 2002)(quoting *Davis v. Johnson*, 174 F.3d 710, 713 (5th Cir. 1999)).
[40] *Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir. 1999).
[41] *Felder v. Johnson,* 204 F.3d 168, 171 (5th Cir. 2000) (quoting *Coleman v. Johnson*, 184 F.3d 398, 402 (5th Cir. 1999)).
[42] *See United States v. Patterson*, 204 F.3d 927, 930 (5th Cir. 2000) (holding that equitable tolling is allowed when the trial court mistakenly granted movant's motion to withdraw his § 2255 ten days prior to the expiration of the one-year statute of limitation while explicitly referencing the wrong date—one year later—as the deadline for filing).
[43] *United States v. Jones*, 172 F.3d 381, 383 (5th Cir. 1999).
[44] ECF No. 66 at 2.

with no update, McGlinn states that she went to Chavez's office.[45] There, she received a copy of the case file only to discover that it contained no Notice of Appeal, and that Chavez failed to conduct any research for Cates' appeal.[46] It is therefore clear that, at a minimum, the many months leading up to McGlinn's discovery should be tolled.

    A.    *Duty to Consult*

In a similar vein, that same period may be tolled because Chavez failed to consult with Cates on his appellate rights entirely. The Sixth Amendment guarantees that a defendant be consulted as to his appellate rights.[47] This right to consultation finds it roots in the guarantee that, "[i]n all criminal prosecutions, the accused shall . . . have the Assistance of Counsel for his defen[s]e."[48] Consultation requires "advising the defendant about the advantages and disadvantages of taking an appeal and making a reasonable effort to discover the defendant's wishes."[49] Courts review failures to consult as allegations of ineffective assistance of counsel under *Strickland v. Washington's* two prong approach.[50] To succeed, a defendant must show that (1) counsel's representation fell below an objective standard of reasonableness, and (2) such deficient performance prejudiced the defendant.[51] Cates succeeds on both prongs.

---

[45] *Id.*
[46] *Id.*
[47] U.S. CONST. amend. VI.
[48] *Id.*
[49] *Id.*; *United States v. Cong Van Pham*, 722 F.3d 320, 323 (5th Cir. 2013).
[50] *Strickland v. Washington*, 466 U.S. 668, 687 (1984).
[51] *Id.*

9

Under the first *Strickland* prong, the Court considers whether Chavez consulted Cates. Cates alleges that he instructed Chavez to file an appeal on his behalf following sentencing and that he was visibly distressed once the Court handed down his sentence.[52] He also alleges that Chavez assured his mother that he was working on his appeal, only to discover later that his appeal had never started.[53] Chavez, on the other hand, argues that he had no duty to consult Cates as to his appellate rights after Cates initialed an appellate waiver at sentencing, therefore extinguishing his duty to consult Cates further on any potential appeals.[54]

As provided by *Roe v. Flores-Ortega,* attorney Chavez must "mak[e] a reasonable effort to discover [Cates'] wishes"[55] regarding whether Cates' wished to appeal. This reasonable effort must be assessed in light of "all the information [Chavez] knew or should have known."[56] Here, Cates claims he instructed Chavez to file an appeal after sentencing and that Chavez never followed through.[57] Chavez, on the other hand, presents a document that bears Cates' initials stating "Appeal, Y or N" with the "N" circled.[58] While that document may appear to waive Cates' appellate rights, it does not operate to waive Cates' constitutional right to effective assistance of counsel.[59] Put another way, Chavez still bore a duty to consult

---

[52] ECF No. 78-1 at 2.
[53] *Id.*
[54] ECF No. 83-1 at 1.
[55] *Roe v. Flores-Ortega*, 528 U.S. 470, 475 (2000).
[56] *Flores-Ortega,* 528 U.S. at 480.
[57] ECF No. 78-1 at 2; *Pham*, 722 F.3d at 323–24 (Holding that "[i]f counsel has consulted with the defendant, the question of deficient performance is easily answered: Counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal.").
[58] ECF No. 83-1 at 3.
[59] *Pham*, 722 F.3d at 324.

with his client; circling the "N" on whether Cates desired to appeal his sentence is simply not up to muster.[60]

In any event, Cates still signaled his desire for appeal indirectly.[61] Cates was visibly upset about the terms of his sentence after being led to believe he would likely receive a substantially lesser sentence.[62] For one reason or another, Chavez fails to counter these claims, focusing in error on the appellate waiver discussed above.[63] Indeed, even if Cates failed to instruct Chavez to appeal as he alleges, under *Cong Van Pham*, a defendant's mere physical distress in response to sentencing qualifies as a reasonable demonstration that he was interested in appealing.[64] Of course, Cates' case that he directly instructed Chavez is bolstered by his mother's inquiries, at his request, into the status of his appeal.[65] It stands to reason that their assumption that his appeal was going forward, along with Chavez's supposed statements that it was, indicate that at some point Chavez knew of Cates' interest in his appeal. This Court finds that Chavez's communications with Cates falls below the prevailing norms. Cates therefore succeeds on the first prong of *Strickland*.

For the second prong, the Court looks to see if "there is a reasonable probability that, *but for* counsel's deficient failure to consult with him about an appeal, he would have timely appealed."[66] Cates does not need to show that he might succeed on appeal, just that he

---

[60] *Id.*
[61] ECF No. 78-1 at 2.
[62] *Id.*
[63] ECF No. 83-1 at 3
[64] *Pham*, 722 F.3d at 323–24.
[65] ECF No. 78-1 at 2.
[66] *Flores-Ortega,* 528 U.S. at 484 (emphasis added).

11

wanted an appeal.[67] "This second-prong prejudice test 'applies even where a defendant has waived his right to direct appeal and collateral review.'"[68] Absent any self-evident reason why Chavez would not have filed a direct appeal—and according to McGlinn he stated that one was in the works—Cates was prejudiced by Chavez's failure.[69] As such, if Movant is to be believed, equitable tolling is warranted for the time that Cates labored under the prejudice of Chavez's misrepresentations that an appeal was being worked on when nothing had been filed.

   B. *Due diligence*

Regardless of tolling, Cates' § 2255 motion is untimely. This Court will toll the statute of limitations from finality of conviction to McGlinn's discovery of Chavez's misrepresentations. It will not toll further due to Cates' lack of due diligence for the year and four months it took McGlinn to notify Cates and then for Cates to file his § 2255.

While tolling can be used to excuse an untimely § 2255, the motion is still subject to subsection four. That section states that the statute of limitations begin at: "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence."[70] In Cates' § 2255 and supporting affidavit he claims McGlinn did not know of the lack of movement on his case until July 2023.[71] While the

---

[67] *Id.*
[68] *Pham*, 722 F.3d at 324 (citing *United States v. Tapp*, 491 F.3d 263, 266 (5th Cir.2007)).
[69] *Id.* at 327 (holding "that in absence of any self-evident reason why Pham would not have filed a direct appeal, and without regard to the potential merits of such an appeal we conclude that he has established prejudice under *Flores-Ortega*.")
[70] 28 U.S.C § 2255 (f)(1)-(4).
[71] ECF No. 78-2 at 1.

affidavit does not give an exact date for when the impediment was discovered,[72] the Court will presume it was the last day of July—Monday, July 31 2023—which is the latest it could have been. As such, the one-year statute of limitations prescribed by AEDPA begins to run at that point, making the last date that a § 2255 motion would have been timely Wednesday, July 31, 2024.[73] Then, for whatever reason, it took McGlinn a year and one month after McGlinn to tell Cates that Chavez never even started the appeal. Cates delayed another four months, until February 6, 2025 to file his § 2225 motion, well beyond his deadline to file inclusive of tolling up to McGlinn's discovery.

"Petitioners seeking to establish due diligence must exercise diligence even when they receive inadequate legal representation."[74] Cates fails to establish that he diligently pursued his rights when his mother was in possession of the crucial information as his agent.[75] Likewise, there is no record of Cates contacting the Fifth Circuit or the District Court about the status of any appeal. Indeed, there is no contemporaneous evidence that Cates believed that an appeal had been filed on his behalf, which "can be likened to the dog that did not bark."[76] McGlinn's affidavit states, "I contacted Maveric [Cates] in August 2024[77] to let him

---

[72] *See* ECF No. 78.
[73] 28 U.S.C. § 2255(f).
[74] *Palacios*, 723 F.3d at 607 (quoting *Manning v. Epps*, 688 F.3d 177, 185 (5th Cir. 2012)).
[75] "[T]he decision to appeal rests with the defendant." *Flores-Ortega,* 528 U.S. at 479. As this decision is personal to Cates, it is reasonable to expect that Cates is discussing with his mother developments in his case. Thus, it would be reasonable to attribute the discovery of the misrepresentation of counsel to McGlinn with the expectation that she would relay that information to Cates as she is acting as his agent.
[76] *Chisom v. Roemer*, 501 U.S. 380, 396, n.23 (1991) (citing A. Doyle, Silver Blaze, in The Complete Sherlock Holmes 335 (1927)).
[77] ECF No. 78-2 at 1–2; The Court will take note that only the month, not date of the information is provided.

13

know that Chavez had not been truthful regarding the entire appeal situation."[78] Cates then sat for over a year before he filed. He fails to allege any newly discovered facts that could not have been previously discovered with the exercise of due diligence to toll further. He likewise fails to assert any other basis for excusing his failure to timely file his § 2255 motion.

### III.     Conflict of Interest

This case also presents an unusual wrinkle. Cates also believes, or at least alleges, that Chavez operated under a conflict of interest. Even if taken as true, Cates' allegations fail to meet the relevant tests. The Sixth Amendment right to counsel includes the right to representation that is free from any conflict of interest.[79] A conflict of interest exists when defense counsel places himself in a position conducive to divided loyalties, such that he cannot provide competent representation.[80] Under the Fifth Circuit's test in *Cuyler,* "[i]n order to establish a violation of the Sixth Amendment, a defendant who raised no objection at trial must demonstrate that an actual conflict of interest has adversely affected his lawyer's performance."[81] To establish a Sixth Amendment violation on the basis of a conflict of

---

[78] It is clear "the decision to appeal rests with the defendant." *Flores-Ortega*, 528 U.S. at 479; *see also* LEGAL ETHICS, LAWYERS DESKBOOK ON PROFESSIONAL RESPONSIBILITY § 1.2–2(a) (2011–12 ed.) ("On these significant and central issues, such as the question of ... whether to appeal, the client should have the final say."); RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 22(1) (2000) ("[T]he following and comparable decisions are reserved to the client[:] . . . whether to appeal in a civil proceeding or criminal prosecution."). As this decision is personal to Movant, it would not be reasonable to allow a third-party to assert a right that belongs solely to Movant.
[79] U.S. CONST. amend. IV; *United States v. Bernard,* 762 F.3d 467, 476 (5th Cir. 2014); *United States v. Hernandez*, 690 F.3d 613, 618 (5th Cir. 2012).
[80] *United States v. Burns*, 526 F.3d 852, 856 (5th Cir. 2008).
[81] *Cuyler v. Sullivan*, 446 U.S. 335, 335 (1980); *see also United States v. Scruggs,* 691 F.3d 669, 670 (5th Cir. 2012) (proving an ineffective assistance based on a conflict of interest, a criminal defendant must show "that an actual conflict of interest adversely affected [the] lawyer's performance.")

interest the defendant must demonstrate: (1) that his counsel acted under the influence of an actual conflict; and (2) that the conflict adversely affected his performance at trial."[82]

Importantly, while similar, the *Cuyler* standard differs from the *Strickland* test in that *Cuyler* requires no showing of *prejudice*.[83] "When a defendant has been able to show that his counsel 'actively represented conflicting interests and that an actual conflict of interest adversely affected his lawyer's performance,' constitutional error has occurred, and prejudice is inherent in the conflict."[84]

But in *Beets v. Scott* [85] the Fifth Circuit rejected a broad approach to the application of the *Cuyler* standard to the complaints of ineffective assistance of counsel arising from alleged conflict of interest between criminal defense counsel's clients.[86] Following *Beets*, the Fifth Circuit has refused to apply the *Cuyler* test outside the narrow context of multiple representation.[87] In the absence of a *Cuyler* actual conflict, a defendant who claims that his attorney had a conflict of interest must show a reasonable probability that the conflict prejudiced the defense and thus undermined the reliability of the proceeding.[88] *Cuyler*

---

[82] *Burns,* 526 F.3d at 856.
[83] *Cuyler,* 446 U.S. at 335; *cf. Strickland*, 466 U.S. at 692 (holding that while prejudice is presumed under the *Strickland* regime, under the *Cuyler* test prejudice is only presumed if the defendant demonstrates that counsel "actively represented conflicting interests" and that "an actually conflict of interest adversely affected his lawyer's performance.").
[84] *United States v. Newell*, 315 F.3d 510, 516 (5th Cir. 2002); *see also Perillo v. Johnson,* 205 F.3d 775, 781 (5th Cir. 2000) (discussing the differences between the *Strickland* and *Cuyler* regimes).
[85] *Beets v. Scott*, 65 F.3d 1258 (5th Cir. 1995) (en banc), cert. denied. 517 U.S. 1157 (1996).
[86] Holding that a potential conflict—in multiple client representation cases—is not an "actual conflict" under the Sixth Amendment.
[87] *See, e.g. Bernard,* 762 F.3d at 476 (holding that only cases involving multiple representations does the Court use the *Cuyler* analysis; otherwise, the Court should impose the *Strickland* test.).
[88] *Bostick v. Quarteran*, 590 F.3d 303, 306 n.2 (5th Cir. 2005).

therefore only applies where an attorney was effectively—if not technically—representing multiple clients in the same proceeding.[89] "An 'actual conflict' exists when defense counsel is compelled to compromise his or her duty or zealous advocacy to the accused by choosing between or blending the divergent or competing interests of a former or current client."[90]

Here, Cates does not present a *Cuyler* issue because Chavez did not represent multiple clients in the same proceeding. Instead, the alleged conflict involves Cates' clandestine dealings with Chavez's nephew. Cates therefore must show ineffective assistance through the usual *Strickland* framework. Cates fails to do so. He likewise cites no caselaw to support that the alleged conflict of interest arises to a Sixth Amendment violation. And this Court has found no case to support his position.

This claim is therefore denied.

## IV.   Certificate of Appealability

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253.[91] Rule 11 of the Rules Governing § 2255 Proceedings requires the Court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant."[92] This Court may only issue a COA if "the applicant has made a substantial showing of the denial of a constitutional right."[93] A movant satisfies this standard by showing "that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists of

---

[89] *United States v. Garza*, 429 F.3d 165, 172 (5th Cir. 2005).
[90] *Perillo*, 205 F.3d at 781.
[91] *See* FED. R. APP. P. 22 (b).
[92] Rules Governing § 2255 Proceedings in the United States District Courts, Rule 11(a) (December 1, 2009).
[93] 28 U.S.C. § 2253(c)(2).

reason could conclude the issues presented are adequate to deserve encouragement to proceed further."[94]

A district court may *sua sponte* deny a COA without requiring further briefing or argument.[95] Upon review and consideration of the record on whether Cates has made a showing that reasonable jurists would question this Court's rulings, the Court determines that he has not and that a COA should not be issued for the reasons stated in this Order. The Court therefore denies a COA.

## CONCLUSION

This Court **DENIES** Movant's § 2255 because it is time-barred, and also denies a certificate of appealability.

It is so **ORDERED**.

SIGNED this 30th day of June, 2025.

_____
DAVID COUNTS
UNITED STATES DISTRICT JUDGE

---

[94] *Miller-El v. Cockrell*, 537 U.S. 322, 326 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).
[95] *See Alexander v. Johnson*, 211 F.3d 898, 898 (5th Cir. 2000).